UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

**JAMIE TRUETT**                                       **CIVIL ACTION**

**VERSUS**                                             **NO. 11-1421**

**ST. TAMMANY PARISH FIRE DISTRICT #12,**              **SECTION "B"(4)**
**DARRELL GUILLOT, & STEPHEN KRENTEL**

                          ORDER AND REASONS

   Before the Court are Defendants St. Tammany Parish Fire District #12, Darrell Guillot, and Stephen Krentel's ("Defendants") Motion for Summary Judgement and Plaintiff Jamie Truett's ("Truett") Opposition to Defendants' Motion for Summary Judgment. (Rec. Docs. No. 25 & 43). Accordingly, and for the reasons articulated below,

   **IT IS ORDERED** that Defendants' Motion for Summary Judgment Judgment is **DENIED**.

Cause of Action and Facts of the Case:

   Plaintiff Truett comes before this Court alleging Defendants, his employers, violated his rights under the U.S. Constitution and Louisiana law by engaging in unlawful retaliation and discrimination against him because of his involvement in a local labor union. Truett seeks declaratory judgment under 28 U.S.C. §§2201 and 2202 and compensation, damages, benefits, equitable and other relief both under 42 U.S.C. §1983 ("§1983"), and under state law.

Truett is currently employed by Defendant St. Tammany Fire Protection District 12 ("District 12") as a Captain. (Rec. Doc. No. 43-2 at 1-2). Defendants Darrell Guillot ("Guillot") and Stephen Krentel ("Krentel") are also employed at District 12, as a Fire Chief and Deputy Fire Chief, respectively. (Rec. Doc. No. 43-2 at 1). Truett has been employed by District 12 since 1995 and was promoted to District Chief in 2005. (Rec. Doc. No. 14 at 3). In April 2010, Truett was named temporary treasurer of the newly established local chapter of the labor union, International Association of Firefighters. (Rec. Doc. No. 43 at 7, 9).

Between July 2010 and May 17, 2011, Truett was disciplined three times by his supervisors at District 12, Guillot and Krentel. (Rec. Docs. No. 14 & 25-1). In July 2010, Krentel gave Truett notice that he was on paid administrative leave, citing Truett's failure to properly report another firefighter's infraction of department policy. (Rec. Docs. No. 14 at 5 & 25-1 at 3). As a condition of his administrative leave, Truett was ordered to remain at his residence during what would have been his regular shift hours. Truett's failure to adhere to this order was cited as insubordination, and served as the basis for his termination on January 18, 2011, following a pre-disciplinary hearing conducted by Guillot. (Rec. Doc. No. 14 at 6).

The next day, Truett appealed his termination to the Civil Service Board ("Board"), which serves as the appellate body for

2

disciplinary actions imposed on firefighters. La. Rev. Stat. Ann. §33:2561 (2012). Following a hearing before the Board on February 22, 2011, Truett was reinstated on March 1, 2011, but demoted from District Chief to Captain.[1] (Rec. Doc. No. 14 at 7). On March 16, 2011, Truett filed a Petition for Judicial Review of the Board's decision in the 22nd Judicial District Court for the Parish of St. Tammany. The Petition was subsequently dismissed on August 9, 2011, pursuant to Truett's own motion. (Rec. Doc. No. 25-15 at 2-4).

In the interim between his reinstatement as a Captain and the dismissal of his state court appeal, Truett was reprimanded twice more for incidents stemming from his March 19, 2011 operation of a fire truck: First, on May 3, 2011, Truett received a written reprimand for failure to report setting off a "drive cam" in the truck;[2] Second, on June 8, 2011, Truett was suspended for a 24-hour period for failing to use his seatbelt during the same March 19th incident. (Rec. Doc. No. 25-1 at 9-10). Both disciplinary actions came after individual pre-disciplinary hearings before the Defendants. *Id*. Truett appealed both actions to the Board, which

---

[1]The Board agreed that Truett's violation of a direct order by his superior, Guillot, was a knowing and intentional act of insubordination. (Rec. Doc. No. 25-8 at 3).

[2]A "drive cam" is a pair of video cameras installed in every District 12 vehicle in the place of rearview mirrors. The drive cam is triggered whenever an unusual event occurs, such as a hard turn by the driver or hitting a curb. (Rec. Doc. No. 25-1 at 6, n. 5).

3

upheld the written reprimand and overturned the 24-hour suspension. (Rec. Docs. No. 25-1 at 10 & 43 at 14).

On June 16, 2011, Truett filed his Complaint before this Court. Defendants filed the instant motion for summary judgment on July 27, 2012.

Law and Analysis:

A. Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas*, 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id*. Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment.

*Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

B.  Defendants' assertion of *res judicata*

Federal courts are required to give the same preclusive effect to state court judgments and quasi-judicial administrative decisions that those judgments would be given in the courts of the state from which those judgments came.[3] 28 U.S.C. § 1738; *Kremer v. Chem. Const. Corp.*, 456 U.S. 461 (1982). Therefore, Louisiana law governs the preclusive effect of judgments rendered by the Board regarding Truett's disciplinary appeals. *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 436 (5th Cir. 2000).  Under Louisiana law, the following requirements must be satisfied for *res judicata*, or claim preclusion[4], to apply:

---

[3]This Court looks solely to state rules of claim preclusion, as federal rules of claim preclusion allow a plaintiff to pursue administrative remedies without jeopardizing §1983 claims. *Frazier v. King*, 873 F.2d 820, 824 (5th Cir. 1989) (noting that to do otherwise would "encourage plaintiffs to bypass administrative proceedings in order to preserve their claims under §1983.")

[4]Defendants *res judicata* argument appears to be based on claim preclusion; that Truett's present claims are barred by the Board's adjudication of his disciplinary appeals.  Issue preclusion is inapplicable because defendants do not contend that the Board adjudicated the actual issues of retaliation, discrimination, or a violation of First Amendment Rights, which are the issues raised by Truett's current claims. (Rec. Doc. No. 25-1).

5

>     (1) the judgment is valid;
>     (2) the judgment is final;
>     (3) the parties are the same;
>     (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and
>     (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation.

*Hugel v. Se. Louisiana Flood Prot. Auth.*, 429 F. App'x 364, 367-68 (5th Cir. 2011), citing *Chevron U.S.A., Inc. v. State*, 993 So.2d 187, 194 (La. 2008) (quoting *Burguieres v. Pollingue*, 843 So.2d 1049, 1053 (La. 2003).

As to the first requirement, "a valid judgment is one rendered by a court <u>with jurisdiction over both the subject matter</u> and the parties after proper notice was given." *Burguieres*, 843 So.2d at 1053 (emphasis added). Here, Truett seeks relief under federal and state law for violations of his constitutional rights caused by Defendants' alleged retaliatory and discriminatory acts towards him. (Rec. Doc. No. 14). The Board's limited jurisdiction does not permit it to adjudicate these claims arising from a violation of First Amendment rights. La. Rev. Stat. Ann. §33:2537 (2012)(limiting the Board's scope to adjudicating personnel administration). Thus, the Board lacks the requisite subject matter jurisdiction for any of its rulings on Truett's disciplinary appeals to bear a preclusive effect on his present federal claims.[5]

---

[5] Defendants appear to make the argument that because some remedies now sought by Truett, namely reinstatement as District

Likewise, defendants' reliance on the *Crockett v. Roberts* case is misplaced. 2010 WL 1254656 (E.D. La. 3/25/10). In *Crockett*, the court found that a campus police officer's claims of breach of contract and abuse of right were precluded in federal court because he had fully and fairly litigated those claims before the Louisiana Civil Service Commission. *Id*. Here, Truett had no such opportunity to raise claims of discrimination or retaliation before the Board.[6] (Rec. Doc. No. 25-14). Further, defendants fail to mention that the court in *Crockett* specifically found that "[Plaintiff's] ... §1983 claims for damages are not barred by *res judicata* because [sic] Civil Service Commission is not able to award damages." *Id.; See Frazier v. King,* 873 F.2d 820, 825 (5th Cir. 1989). Similarly, the Board is without authority to award Truett the complete relief he seeks, which includes compensation

---

Chief and back pay, overlap with remedies available before the Board, his federal claims are barred by *res judicata*. (Rec. Doc. No. 25-1 at 13). However, there is no theory of *res judicata* based merely on an overlap of remedies, where the subject matter of the claims is distinct or where complete relief is not available in the first forum. *See Frazier v. King,* 873 F.2d 820, 825 (5th Cir.1989) (Though a nurse's claims for reinstatement with pay were denied by the Civil Service Commission, it did not preclude her subsequent §1983 claims when "limitations on the power of the [administrative agency] prohibited her from seeking complete damages [such as compensatory damages] in the [agency] proceeding.").

[6]Defendants' reliance on *Russo v. Jefferson Parish Water Dep't*. is similarly off-point. Indeed, the defendants themselves point out "[t]he board rendered an opinion rejecting Russo's [federal law] claim." (Rec. Doc. No. 25-1 at 14). This is distinguishable from the present facts, where Truett's claims of retaliation or discrimination were never before the Board.

7

and damages for defendants' alleged violation of his rights and privileges. (Rec. Doc. No. 14).

Therefore, the Board's rulings on Truett's disciplinary matters are without preclusive effect on the relief Truett seeks before this Court, and the defendants' motion for summary judgment on the grounds of *res judicata* is **DENIED**.[7]

C. Deputy Chief Krentel's liability

To recover against a government official under §1983, a plaintiff must show that the official was either personally involved in the alleged constitutional violation, or that the official's actions were causally connected to the alleged violation. *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999). Truett has pointed to evidence that would allow a reasonable trier of fact to determine that Krentel was either personally involved or committed acts connected to the alleged retaliatory and discriminatory actions in violation of Truett's First Amendment rights. This evidence includes depositions by both Guillot and Krentel where both allude to Krentel's involvement in investigating Truett's infractions and taking disciplinary actions against Truett, particularly in conducting preliminary disciplinary hearings. (Rec. Doc. No. 43-3

---

[7]Because the Board lacks subject matter jurisdiction over Truett's federal claims and the first requirement of a valid judgment on those claims cannot be met, the Court need not address the remaining four requirements for preclusive effect of a judgment under Louisiana law.

at 28, 173). Consideration of the weight of this evidence is a task reserved for trial. Therefore, the evidence is sufficient at this stage for Truett to survive the summary judgment standard on the issue of Krentel's liability.

D. Defendant Guillot's absolute immunity

Because Guillot attempts to invoke absolute immunity as an administrative officer, he bears the burden of justifying the absolute immunity. (Rec. Doc. No. 25-1 at 19); *Harlow v. Fitzgerald*, 457 U.S. 800, 812 (1982). Guillot attempts to claim absolute immunity on two separate grounds: 1) his function as a "quasi-judicial" administrative officer, and 2) his prosecutorial role in Truett's discipline. (Rec. Doc. No. 25-1 at 19-20).

Truett brings his action against Guillot under §1983, which provides a civil action against government officials for deprivation of rights. (Rec. Doc. No. 14). Although §1983 does not contain an express grant of judicial immunity, the Supreme Court has held that the statute incorporates judicial immunity from the common law. *Pierson v. Ray*, 386 U.S. 547, 553 (1967). This absolute immunity has been extended to "quasi-judicial" administrative officers when their functions mirror those associated with the judicial process, so long as they are not required to "perform prosecutorial and investigative functions as well as their judicial work." *Butz v. Economou*, 438 U.S. 478, 513-14 (1978). Here, Guillot is not entitled to absolute immunity as

9

a "quasi-judicial" official because according to his own deposition, he was engaged in "investigative functions," such as participating in some of the questioning of Truett regarding the infractions for which he was disciplined. (Rec. Doc. No. 43-3 at 59-62).

Similarly, Guillot's claim of absolute immunity as a prosecutor also fails, due to his dual role as judiciary and prosecutor in the initial disciplinary actions taken against Truett. Defendants rely on *Butz* to support their argument that Guillot is entitled to absolute immunity as a prosecutor, citing that "the decision to initiate administrative proceedings against an individual is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution." (Rec. Doc. No. 25-1 at 20), citing *Butz*, 438 U.S. at 515. However, Defendants fail to note that such prosecutorial immunity is predicated on the notion that "[a]n administrator's decision to proceed with a case is subject to scrutiny in the proceeding itself. The respondent may present his evidence to an impartial trier of fact and obtain an independent judgment as to whether the prosecution is justified." *Butz*, 438 U.S. at 516. Therefore, it would be an absurd result to imbue Guillot with absolute immunity as a prosecutor, when Defendants readily admit that the "charges" which Guillot brought against Truett were decided by Guillot himself in a "quasi-judicial" capacity, and not an "impartial trier of fact"

as required by *Butz*. Accordingly, Guillot's motion for summary judgment on the grounds of absolute immunity is **DENIED**.

E. Guillot and Krentel's claims of qualified immunity

The doctrine of qualified immunity protects government officials from liability for civil damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). Unlike absolute immunity, the plaintiff seeking to avoid the affirmative defense of qualified immunity bears the burden to demonstrate the inapplicability of the defense. *Id*. To satisfy this burden, a plaintiff must satisfy a two-prong test: 1) allege a constitutional violation; and 2) claim that defendants' actions were objectively unreasonable in light of the law clearly established at the time of the actions complained of. *Id*., citing *Wilson v. Layne*, 526 U.S. 603, 609 (1999).

Here, the first prong has been met by Truett, because he alleges that Defendants violated his constitutional rights through retaliatory and discriminatory acts in reaction to his exercise of his First Amendment rights to Freedom of Association. (Rec. Doc. No. 14). As to the second prong, under a summary judgment standard, "if any reasonable trier of fact could find that defendants' actions were objectively unreasonable, then the defendants are not entitled to summary judgment." *Lennon v.*

11

*Miller*, 66 F.3d 416, 420 (2d Cir. 1995), citing *Halperin v. Kissinger*, 807 F.2d 180, 189 (D.C. Cir. 1986).  Truett alleges that Guillot and Krentel's actions were "objectively unreasonable" because they were motivated by retaliation for his involvement with a local union chapter, in a violation of a clearly established First Amendment right.  (Rec. Doc. No. 43 at 30), citing *Boddie v. Gale*, 989 F.2d 748 (5th Cir. 1993).  Truett cites deposition testimony of both Guillot and Krentel indicating that they were aware of Truett's involvement with the union and that there was negative sentiment associated with the formation of a union in District 12.  (Rec. Doc. No. 43-3 at 31, 111, 115).  At the very least, the depositions raise a genuine issue of material fact regarding Defendants' claims that they were unaware of Truett's union involvement, and could lead a reasonable fact-finder to conclude that the Defendants' actions were motivated by anti-union sentiment.  At this stage, therefore, Truett has satisfied his burden to survive summary judgment on the issue of defendants Guillot and Krentel's qualified immunity.

    New Orleans, Louisiana, this 19th day of September, 2012.

                                   UNITED STATES DISTRICT JUDGE